## TAYLOR et al. v. ST. LOUIS TRANSIT COMPANY, Appellant.

**Division One, October 19, 1906.**

1. **ATTORNEY'S SERVICES: No Notice.** Attorneys may recover
   under the first section of the Attorney's Lien act, for services
   rendered a client who settles with the defendant after suit is
   instituted, whether or not there has been a notice of the exist-
   ence of the contract of employment served upon the defendant
   as provided by the second section.

2. ———: ———: **Lien: No Judgment.** An attorney has a lien,
   under the first section of the Attorney's Lien act, upon his
   client's cause of action from the commencement of the suit
   thereon. It is not necessary that the claim for services be re-
   duced to a verdict or judgment, in order that the attorney may
   maintain a suit against the defendant for his services. Where
   a suit once instituted is settled by the client without the attor-
   ney's consent, the attorney may maintain a suit against the de-
   fendant for the amount of his services. The lien is upon the
   cause of action until merged and then it attaches to the thing

into which it is merged; if not merged into a judgment, the lien remains and "cannot be affected by any settlement between the parties."

3. ———: **Settlement: Mode of Procedure.** In order to recover for his services, where the suit, properly instituted, has been settled by his client without his consent, the attorney is not required to prosecute the original claim to judgment. The statute gives him a property right in the cause of action, but provides no remedy for the protection of that right. But where a right is given and no particular remedy is provided, a remedy is afforded by a civil action against the party who deprives the holder thereof of its benefit; such an action would not be, strictly speaking, one to enforce a lien, but one for the value thereof against him who deforced the lien, and is an appropriate remedy for the protection of the right.

4. ———: **Champertous Contract.** A written contract of employment, by which the client agrees to pay costs and one-fourth of the sum recovered as the attorney's compensation for services to be rendered, is not champertous.

5. ———: ———: **Costs.** Attorneys entered into a contract with three persons to institute and prosecute suits against a railway company for personal injuries, and afterwards instituted three several suits for them, and thereafter two of them settled with the company without their consent, and they bring suit against the company for their services in those cases. *Held*, that the fact that, after such settlements were made, one of the attorneys voluntarily became surety for costs in the third suit, did not have any retroactive effect upon the contract to render it champertous.

6. **CONSTITUTIONAL LAW: Attorney's Lien Act.** The Attorney's Lien act (Laws 1901, p. 46) is a constitutional statute, for the reasons given in O'Connor v. Railroad, ante, page 622.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Blevins,* Judge.

AFFIRMED.

*Glendy B. Arnold* for appellant; *Boyle & Priest* and *George W. Easley* of counsel.

(1) Plaintiffs cannot recover under the 1st section of the Attorneys'-Lien act, becaust it is neither

alleged nor proved that the suits compromised by this defendant had been reduced to a verdict or judgment, as the lien given by that section is not perfected until the cause of action has been reduced to a verdict, report, decision or judgment. Smelker v. Railroad, 81 N. W. 995; Swift v. Register, 97 Ga. 446; Rogers v. Furse, 83 Ga. 115; Brown v. Railroad, 101 Ga. 80; O'Brien v. Railroad, 50 N. Y. Supp. 159; Johnson v. Mc-Curry, 102 Ga. 471; Railroad v. Givens, 13 Ky. L. R. 491; Herman v. Railroad, 121 Fed. 184; Trigg v. Chambers, 56 Ga. 279; Coleman v. Ryan, 58 Ga. 132. Under the Georgia Code, sec. 2814, if a settlement be made between the parties and the attorney, still the attorney may prosecute the suit to final judgment for the purpose of fixing his lien against the judgment, and if in that suit the defendant prevails, the attorney's lien is extinguished. Brown v. Railroad, 101 Ga. 80. If this were not true, the attorney might have a lien upon causes of action that never existed, and the defendant required to pay for something that could not have been recovered from him in the original suit. This would make the defendant liable to punishment for an attempt to purchase peace. The construction of the New York statute, from which ours is mainly adopted, is like the Georgia cases. O'Brien v. Railroad, 50 N. Y. Supp. 159. The attorney must proceed with the original case and prosecute the original claim to final judgment before he can enforce the lien. Johnson v. McCurry, 102 Ga. 471; Smelker v. Railroad (Wis.), 81 N. W. 995; Railroad v. Givens, 13 Ky. L. R. 491. It must be borne in mind that there is neither allegation nor proof that the settlement between plaintiff and defendant of the original suit was fraudulently made for the purpose of depriving the attorney of his fee. If such were the case, the court could doubtless refuse to allow the order of discontinuance or dismissal of plaintiff to be entered, but would permit the cause to proceed reg-

ularly, and the lien of the attorney enforced against such judgment as might be obtained therein. (2) Plaintiffs are not entitled to recover under the second section of the Attorneys' Lien act because that section of the act is unconstitutional. The plaintiff had no lien as an attorney at common law. Alexander v. Railroad, 54 Mo. App. 66. The Constitution provides that "no bill . . . shall contain more than one subject, which shall be clearly expressed in its title." Constitution, art. 4, sec. 28; Cooley's Const. Lim. (3 Ed.), 141; St. Louis v. Tiefel, 42 Mo. 590; Dorsey's Appeal, 72 Pa. St. 192; In re Green, 14 Colo. 401; Brooks v. People, 14 Colo. 413. (3) The lien should have been enforced against the sum of money in the hands of the original plaintiff. Such is the direct provision of the act, that the lien shall be enforced against the proceeds thereof in whosesoever hands they may come. This record shows that they were in the original plaintiff's hands, and the lien should be enforced against that fund. (4) The contract between plaintiffs and their clients is champertous and therefore void. It is a single contract and not three separate agreements to prosecute three separate causes of action. And while the written contract provides that their clients pay all costs of court yet Mr. Seneca N. Taylor admitted on the witness stand that he agreed to and did furnish the money for costs in the case of Irene Violet Aston. The contract is for a contingent fee. "The common-law rule respecting champertous contracts is in force in this State." Duke v. Harper, 66 Mo. 51. A contract between attorney and client that the attorney is to receive as compensation for his services a portion of the property in controversy, and that he is to pay the costs (or any part thereof) of litigation, is champertous. Million v. Ohnsorg, 10 Mo. App. 432.

*Seneca N. & S. C. Taylor* for respondents.

(1) Under our statute, from the commencement of the action the attorney's lien attached upon the plaintiff's causes of action; and the institution of the suits was the only notice of such attorney's lien required to make the defendant liable for compromising in disregard of such attorney's lien and paying the entire agreed sum to plaintiffs. Laws 1901, p. 46; Young v. Renshaw, 102 Mo. App. 182; Yonge v. Railroad, 109 Mo. App. 235; New York Code Civ. Pro., sec. 66; Caster v. Ferry Co., 55 N. Y. Civ. Pro. Rep. 145; Keeler v. Keeler, 51 Hun 505; Bevins v. Albro, 86 Hun 590; Quinlan v. Birge, 43 Hun 482; Fosterman v. Schulting, 35 Hun 504; Galcano v. Whitenaek, 30 N. Y. Supp. 415; Marvin v. Marvin, 19 N. Y. Supp. 571; Vrooman v. Picking, 54 N. Y. Supp. 389; Peri v. Railroad, 152 N. Y. 526; Railroad v. Wells, 104 Tenn. 711; Tompkins v. Railroad, 110 Tenn. 157; Railroad v. Proctor, 21 Ky. L. R. 447; Railroad v. Givens, 13 Ky. L. R. 491; Railroad v. Thatcher, 17 Kan. 100; Farry v. Davidson, 44 Kan. 377; Winslow v. Railroad, 71 Iowa 191; Larned v. City of Dubuque, 86 Iowa 167; Parsons v. Hawley, 92 Iowa 175; Walton v. Railroad, 112 Iowa 566; Railroad v. Ackley, 58 Ill. App. 572.   (2)   Mr. and Mrs. Aston, as plaintiffs, had power to dismiss their suits.   They had power to compromise their causes of action for $2,250, the sum actually agreed upon between them and defendant.   But they and defendant combined had no power to destroy the lien of the attorneys who instituted the suits both upon the causes of action and the agreed sum for the compromise.   When by compromise they agreed that $2,250 was the amount the defendant should pay for a satisfaction of their causes and dismissal of the suits, the lien of Seneca N. and S. C. Taylor and Eugene Hale attached to that agreed sum to the extent of 25 per cent thereof, that being

the agreed compensation the attorneys were to receive
of the amount obtained by compromise or judgment
upon the Astons' cause of action.  Therefore, when
defendant paid to the Astons the entire agreed sum,
in disregard of the attorney's lien, it made itself liable
to the attorneys in a civil action for 25 per cent of the
amount agreed upon and paid as such compromise.
Reason and authorities alike sustain these propositions.
Laws 1901, p. 46, sec. 1; Yonge v. Railroad, 109 Mo.
App. 235; Young v. Renshaw, 102 Mo. App. 182; Tomp-
kins v. Railroad, 110 Tenn. 157; Railroad v. Wells, 104
Tenn. 706; Railroad v. Thatcher, 17 Kan. 100; Farry
v. Davidson, 44 Kan. 377; Larned v. City of Dubuque,
86 Iowa 167; Parsons v. Hawley, 92 Iowa 175; Rail-
road v. Ackley, 58 Ill. App. 572; Railroad v. Givens,
13 Ky. 491; Railroad v. Proctor, 21 Ky. 447; 2 Clark
& Skyles on Law of Agency, p. 1589; Peri v. Railroad,
152 N. Y. 526.  (3)  Where a new right is created by
statute, and a particular proceeding not theretofore
existing to enforce the right is prescribed, the statu-
tory remedy, if adequate, must be pursued.  Railroad
v. Railroad, 149 Mo. 253; Markowitz v. Kansas City,
125 Mo. 485; Hickman v. City of Kansas, 120 Mo. 110;
Pleasant Hill v. Dasher, 120 Mo. 110; Clinton to use v.
Henry County, 115 Mo. 557; Baker v. Railroad, 36 Mo.
543; Endlich on Interpretation of Statutes, sec. 154.
(4)  (a)  Where a statute creates a new right, but pro-
vides no remedy for its enforcement, the courts will not
allow the right to perish for want of a remedy, but will
enforce such right in an appropriate action in the na-
ture of a trespass on the case, which in Missouri is
called a civil action.  R. S. 1899, secs. 539, 592; Yonge
v. Railroad, 109 Mo. App. 249; Sedgwick, Stat. & Const.
Law (2 Ed.), 75; Railroad v. Thatcher, 17 Kan. 100;
Farry v. Davidson, 44 Kan. 377; Winslow v. Railroad,
71 Iowa 191; Larned v. City of Dubuque, 86 Iowa 197;
Parsons v. Hawley, 92 Iowa 175; Walton v. Railroad,

112 Iowa 566; Railroad v. Ackley, 58 Ill. App. 572; Tompkins v. Railroad, 110 Tenn. 157.  (b)  Where a suit is brought upon a statutory cause of action, it is only necessary that the petition should state facts which bring the case within the provisions of the statute, without referring to it.  Kennayde v. Railroad, 45 Mo. 258; White v. Maxcy, 64 Mo. 558; Reynolds v. Railroad, 85 Mo. 94; Gurley v. Railroad, 104 Mo. 211; Emerson v. Railroad, 111 Mo. 161; Lore v. American Mfg. Co., 160 Mo. 621.  (5)  The Missouri statute creating a lien upon a plaintiff's cause of action is not unconstitutional.  Young v. Renshaw, 102 Mo. App. 182; Yonge v. Railroad, 109 Mo. App. 235; New York Code Civ. Pro., sec. 66; Caster v. Ferry Co., 5 N. Y. Civ. Pro. Rep. 145; Fosterman v. Schulting, 35 Hun 504; Quinlan v. Birge, 43 Hun 482; Keeler v. Keeler, 51 Hun 505; Givens v. Albro, 86 Hun 505; Peri v. Railroad, 152 N. Y. 521; Railroad v. Wells, 104 Tenn. 711; Tompkins v. Railroad, 110 Tenn. 157; Railroad v. Givens, 13 Ky. L. R. 491; Railroad v. Proctor, 21 Ky. L. R. 447; Railroad v. Thatcher, 17 Kan. 100; Farry v. Davidson, 44 Kan. 377; Winslow v. Railroad, 71 Iowa 191; Larned v. City of Dubuque, 86 Iowa 167; Parsons v. Hawley, 92 Iowa 175; Walton v. Railroad, 112 Iowa 566.  (6)  The position of appellant that the title of the act does not sufficiently disclose its purpose and that it contains more than one subject is untenable. City of Hannibal v. County of Marion, 69 Mo. 571; State ex rel. v. Ransom, 73 Mo. 78; State ex rel. v. Shepard, 74 Mo. 310; State v. Blackstone, 115 Mo. 427; State ex rel. v. Slover, 134 Mo. 16; Lynch v. Murphy, 119 Mo. 170; Ewing v. Hoblitzelle, 85 Mo. 71; State ex rel. v. Bronson, 115 Mo. 376; State ex rel. v. Hegge, 135 Mo. 112; State ex inf. v. Ins. Co., 150 Mo. 45.  (7) If, however, the second section of the attorney's lien law was unconstitutional, that cannot affect the first

section, because a part of a law may be constitutionally valid and another invalid, where the objectionable part may be separated from the other, and this is so although the valid and invalid parts may be contained in the same section. State v. Bockstruck, 136 Mo. 336; State v. Bixman, 162 Mo. 1; State ex rel. v. Mason, 155 Mo. 486; State v. Whitaker, 160 Mo. 59.

BRACE, P. J.—On the 24th of October, 1902, the following contract in writing was entered into:

"Whereas, we, J. W. Aston, Eurenia Aston and Irene Violet Aston, of the city of St. Louis, Missouri, have a claim against the St. Louis Transit Company for injuries by us sustained on the 28th day of September, 1902, at or near Macklin avenue on a Chouteau avenue car, on Chouteau avenue, in the city of St. Louis, for the aggregate sum of $50,000, and having this day employed S. N. & S. C. Taylor and Eugene Hale, attorneys at law, of St. Louis, Missouri, as our attorneys to prosecute our said claim for us to a final judgment or settlement, using their skill and best ability in the prosecution of the same in our behalf. And in consideration of the services and advice rendered and to be rendered herein by my said attorneys, we hereby agree to pay the necessary court costs and to pay our said attorneys a fee or compensation equal to twenty-five per centum of whatsoever amount may be realized on said claim, whether the same be collected by suit, compromise, settlement or otherwise. And we further agree with our said attorneys that we will not settle or offer to settle our claims only in the presence of our attorneys."

Thereafter, on the 13th day of November, 1902, the said Taylors and Hale, in pursuance of said contract, instituted suits against the St. Louis Transit Company, in the St. Louis City Circuit Court, one in favor of the said Eurenia Aston for $25,000 one in favor of the said Irene Violet Aston for $15,000, returnable to the De-

cember term, 1902, and, on the 4th of May, 1903, one the entry of satisfaction was set aside and execution to the June term, 1903, of said court, and sued out writs thereon which were duly served on said Transit Company.

Afterwards, on the 5th of May, 1903, the said Transit Company, without the knowledge or consent of the said Taylors or Hale, compromised and settled said causes of action in favor of said Eurenia Aston and the said J. W. Aston for the sum of $2,250, paid to them by the company, and the said Astons executed releases to the company of their respective causes of action and dismissed their said suits. The Astons were insolvent, and, thereafter, the said Hale assigned all his interest in his claim for legal services rendered in said suits to the said Seneca N. and Seneca C. Taylor, who, afterwards, on the 16th of May, 1903, instituted this suit in which they seek to recover the sum of $562.50 from the Transit Company, to which they claim they are entitled by reason of the premises. Their claim was sustained by the trial court and from a judgment in their favor for that amount the defendant Transit Company appealed.

The appeal comes to this court because of constitutional questions duly raised in the course of the trial.

The law under which plaintiffs claim the right to recover is an act of the General Assembly, approved February 25, 1901, which is as follows (Laws 1901, p. 46.):

"Section 1. The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the services of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a

verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosever hands they may come; and cannot be (effected) [affected] by any settlement between the parties before or after judgment.

"Sec. 2. In all suits in equity and in all actions or proposed actions at law, whether arising *ex contractu* or *ex delicto,* it shall be lawful for an attorney at law either before suit or action is brought, or after suit or action is brought, to contract with his client for legal services rendered or to be rendered him for a certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action, either before the institution of suit or action, or at any stage after the institution of suit or action, and upon notice in writing by the attorney who has made such agreement with his client, served upon the defendant or defendants, or proposed defendant or defendants, that he has such an agreement with his clients, stating therein the interest he has in such claim or cause of action, then said agreement shall operate from the date of the service (s) of said notice as a lien upon the claim or cause of action, and upon the proceeds of any settlement thereof for such attorney's portion or percentage thereof, which the client may have against the defendant or defendants, or proposed defendant or defendants, and cannot be affected by any settlement between the parties either before suit or action is brought, or before or after judgment therein, and any defendant or defendants, or proposed defendant or defendants, who shall, after notice served as herein provided, in any manner, settle any claim, suit, cause of action, or action at law with such attorney's client, before or after litigation instituted thereon, without first procuring the written consent of such attorney, shall be liable to such attorney for such attorney's lien as aforesaid upon the proceeds of such settlement, as per the

contract existing as hereinabove provided between such attorney and his client.''

I.  No notice of the contract aforesaid was given to the defendant as provided in the second section of said act, and if the plaintiffs can recover at all it must be under the provisions of the first section thereof, which is a literal transcript of the New York Act of 1879, N. Y. Code of Civ. Pro., sec. 66, and which does not require any other notice than the institution of the suit.  [Coster v. Greenpoint Ferry Co., 5 N. Y. Civ. Pro. Rep. 146; Keeler v. Keeler, 51 Hun 505; Quinlan v. Birge, 43 Hun 483; Vrooman v. Pickering, 54 N. Y. Supp. 389; Peri v. Railroad, 152 N. Y. 521.]

For defendants it is contended that they cannot recover under the first section ''because it is neither alleged nor proved that the suits compromised by this defendant had been reduced to a verdict or judgment, as the lien given by that section is not perfected until the cause of action has been reduced to a verdict, report, decision or judgment.''  If this contention can be maintained, then the defendant having settled with the plaintiffs' clients and they having dismissed their suits, the plaintiffs, of course, cannot recover; but the statute will not bear such a construction.  The plain and obvious meaning of the section is that an attorney of record shall have a lien upon his client's ''cause of action'' from the commencement of the suit thereon; and, if, afterwards, the same becomes merged in ''a verdict, report, decision, or judgment in his client's favor,'' such lien shall attach thereto, and cannot be affected by ''any settlement between the parties before or after judgment.''  This lien is upon the cause of action until merged and then it attaches to the thing into which the cause of action is merged.  It is just as perfect before as after the judgment, and if the cause of action is not merged in a judgment, the lien

thereon remains and "cannot be affected by any settlement between the parties."

This statute has been much thrashed over in the courts of New York, whence it comes to us. Speaking of it, the Court of Appeals, in Peri v. Railroad, supra, said:

"This language is very comprehensive and creates a lien in favor of the attorney on his client's cause of action, in whatever form it may assume in the course of the litigation, and enables him to follow the proceeds into the hands of third parties, without regard to any settlement before or after judgment. This is a statutory lien of which all the world must take notice, and any one settling with a plaintiff without the knowledge of his attorney, does so at his own risk. [Coster v. Greenpoint Ferry Co., 5 Civ. Pro. Rep. 146; affirmed, without opinion, 98 N. Y. 660.]

"It is urged by the defendant's counsel that this construction of the section is against public policy, as the law favors settlements; that the plaintiff's attorney might refuse to disclose his lien, and thereby stand in the way of settlement, and compel parties to litigate who desired to compromise their differences. This criticism overlooks the fact that the existence of the lien does not permit the plaintiff's attorney to stand in the way of a settlement. The client is still competent to decide whether he will continue the litigation, or agree with his adversary in the way.

"The lien operates as security, and if the settlement entered into by the parties is in disregard of it and to the prejudice of plaintiff's attorney, by reason of the insolvency of his client, or for other sufficient cause, the court will interfere and protect its officer by vacating the satisfaction of the judgment and permitting execution to issue for the enforcement of the judgment to the extent of the lien, or by following the proceeds in the hands of third parties, who received them

before or after judgment impressed with the lien. [Poole v. Belcha, 131 N. Y. 200; Bailey v. Murphy, 136 N. Y. 50; Lee v. V. O. Company, 126 N. Y. at page 587.]''

And the construction put upon it in that State, as disclosed in that case and in the other cases hereinbefore cited and the many other cases therein cited and applicable to the case in hand, is well expressed in Keeler v. Keeler, supra, the decision in which is as follows:

"Section 66 of the Code of Civil Procedure is explicit in regard to the lien of an attorney upon his client's cause of action for his services. The amount of it 'is governed by agreement, express or implied, which is not restrained by law.' It attaches upon the service of the first pleading, 'and cannot be affected by any settlement between the parties before or after judgment.' No notice of the lien need be given to the adverse party. The statute makes the lien complete. Payment in settlement of the cause of action to the party himself without notice to the lienor, and without affording him an opportunity of protection, unless he has waived his rights, cannot prejudice him. A right so fully and completely vested must necessarily draw to itself a remedy adequate to its enforcement. The simplest remedy in the case of the attorney for the plaintiff, where the parties settle before trial, is to permit him to continue the action and recover so much upon his client's cause of action as it existed before settlement, as equals the amount of the lien. Such was the course here pursued, and is sanctioned by authority. [Coster v. Greenpoint Ferry Co., 5 Civ. Pro., 146; s. c., 98 N. Y. 660; Wilber v. Baker, 24 Hun 24; Forstman v. Schulting, 35 Id. 504; Pickard v. Yencer, 10 Week. Dig. 271; Albert Palmer Co. v. Van Orden, 64 How. Pr. 79.]''

These cases also illustrate the mode of procedure

in that State.  In the first case the settlement was made after judgment, and, on application of the attorneys, the entry of satisfaction was set aside and execution awarded thereon to the extent of their lien.  In the second case the settlement was after suit brought but before issue joined; and, afterwards, the defendant answered, alleging the settlement and payment; the agreement with the attorney was that he was to have one-half of the recovery.  The settlement was for $300, and the court directed a verdict in favor of plaintiffs for $150.  In this class of cases this is the usual course of procedure by attorneys to enforce their lien under this statute in that State, which is characterized by the court of appeals in the first case as ''a special proceeding and cannot be regarded in any proper sense as a motion in the action.''  In none of the New York cases is it held or intimated that the attorney's lien is dependent upon the prosecution of his client's case to judgment on the original cause of action.  In O'Brien v. Railroad, 50 N. Y. Supp. 159, the only New York case bearing upon, and cited in support of this contention it was held:

''1.  Where plaintiff has settled the case, and given defendant a release, the fact that he had agreed with his attorney that the latter should receive as compensation for his services a percentage of the recovery constitutes no reason why, as between plaintiff and defendant, the release should not be pleaded, for the attorney's rights, under his agreement, are not prejudiced either by the release or plea.

''2.  If, in such a case, the attorney desires to prosecute the action in plaintiff's name for his own benefit, he may still do so, but in that event must assume the payment of any judgment for costs which defendant may recover.''

This case is entirely consistent with the other cases cited and in no way supports the contention that

a judgment on the original cause of action is necessary to support the lien, but like the other demonstrates that such a procedure is simply a way adopted in that State of affording the attorney a remedy for the enforcement of his lien.

But, in support of this contention, it is further argued, that as the existence of a cause of action is the sole foundation of the attorney's lien, he must prosecute the original claim to final judgment before he can enforce his lien, else he might recover upon a lien which had no foundation, i. e., where there was in fact no cause of action. This argument is answered by the facts in this case. The defendant settled two of the causes of action upon which the plaintiffs had a lien, for the sum of $2,250, thereby admitting that plaintiff's clients had a good cause of action for at least that amount, and he only seeks in this action to recover twenty-five per cent of that amount. Why then should he be required to prosecute his client's action to judgment in order to show that his client had a good cause of action for that amount, and "echo answers, why?" for no good reason can be assigned why he should do so vain a thing. In support of this contention cases are cited from Georgia and Wisconsin; and against it, by the other side, from Tennessee, Iowa, Kansas and Kentucky; but, as the statutes of these States are different from the one under consideration, we deem it unnecessary to review them. As opposed to this contention the cases of Young v. Renshaw, 102 Mo. App. 173, and Yonge v. Railroad, 109 Mo. App. 235, are also cited. But, as the suits in those cases were based on the second section of the act, they will not be reviewed. It is best to keep our attention fixed upon the section in question and the decisions thereon in the State from which it was derived.

The fact is, that while the act in question, in plain and unmistakable terms, gives a valuable property right

in the cause of action, and declares that such right cannot be affected by any settlement between the parties before or after judgment, it provides no remedy for the protection of that right; and that the right might not perish, the courts of New York adopted the method indicated in the decisions cited for its protection. But it does not at all follow that because they did so no other mode of procedure can be followed to enforce that right—*ubi jus ibi remedium*—and in this State where a right is given and no particular remedy is provided, such remedy is afforded by a civil action against the party who deprives the holder thereof of its benefit; such an action would not be, strictly speaking, an action to enforce the lien, but an action against him who deforced the lien, for the value thereof, and no good reason can be given why such an action should not be maintained in a case like this, where the defendant settles with the plaintiff, who is insolvent, for a specific amount, and the agreement between the plaintiff and his attorney was that the attorney should receive a certain per cent of that amount. This is an appropriate remedy for the protection of his right and may well be adopted. It is perfect folly to say that he must follow the proceeds into the hands of his insolvent client, for this would be no remedy at all. That is the very evil which this legislation was intended to remedy, and this is all we deem it necessary to add in answer to the fourth point of appellant's counsel, which is simply a repetition in different form of the argument on the preceding points.

II. It is next contended that "plaintiffs cannot recover under the second section of the Attorney's Lien act because that section is unconstitutional." Plaintiffs in this action do not seek to recover under that section, and it might well be that although the second section is unconstitutional, the first one might nevertheless be constitutional and valid, as the two sec-

tions seem easily separable and one might have been well adopted without the other; as was in fact the case with the first section in New York, where it has been upheld for more than a quarter of a century. But it need not be put on that ground, as the argument in support of this contention is aimed at the whole act and the points made against its constitutionality are precisely the same as in the case of O'Connor v. Railroad, decided in Division No. 2 of this court, at this term, and reported at page 622 of this volume, in which the constitutionality of the act was upheld and all the arguments against it urged in this, as well as in that case, satisfactorily and conclusively answered in the able opinion of Fox, J., delivered therein, in which we concur.

III. It is next and finally contended, "that the contract between plaintiffs and their clients is champertous and therefore void." The modern doctrine "is to allow a liberal agreement between attorney and client so that a contract for a contingent interest in the subject-matter of litigation by way of compensation for professional services instead of paying or contracting to pay absolutely a sum certain will be held valid and enforcible." [5 Am. and Eng. Ency. of Law, p. 826.] And such is the law in Missouri. [Duke v. Harper, 66 Mo. 51; Yonge v. Railroad, 109 Mo. App. 235; Laws 1901, p. 46, sec. 2.]

The fact that Mr. Seneca N. Taylor, after the contract was made between plaintiffs and their clients and after suits in favor of J. W. and Eurenia Aston had been instituted and plaintiff's rights as to such suits under the contract had become vested and fixed, voluntarily became surety for costs in another suit instituted in favor of Irene Violet Aston, did not and could not have any retroactive effect upon the contract to render it champertous.

The judgment of the circuit court is affirmed. All concur except *Graves, J.,* not sitting.