E. F. DENT, Respondent, v. A. J. ARTHUR, Appellant.

Springfield Court of Appeals, May 8, 1911.

1. **CONTRACTS: Guaranty: Garnishment.** While plaintiff had in his possession $200 belonging to A, he was summoned as garnishee under an execution against A. A employed defendant as an attorney to represent the plaintiff in the garnishment proceedings, but the trial resulted in a judgment against the plaintiff. At this time the money held by plaintiff was sufficient to pay the judgment and costs and this he desired to do and not take an appeal, but defendant promised him that if he would permit the case to be appealed defendant would guarantee him against any loss over and above the $200. Upon this agreement the case was appealed and on appeal the judgment was affirmed. *Held*, in an action by plaintiff against the defendant to recover for the balance of the costs paid by plaintiff over and above the $200, that the guarantee made

by defendant was his own personal obligation and that the evidence was sufficient to entitle plaintiff to recover.

2. **STATUTE OF FRAUDS: Guaranty: Personal Obligation.** A judgment had been rendered against a garnishee who objected to taking an appeal because of the risk of incurring liability for additional costs over and above the amount of money held by him and the attorney employed by the judgment debtor to represent the garnishee agreed that if the garnishee would let the appeal be taken he would hold him harmless as to any costs above the amount of money held by the garnishee. *Held*, this made the agreement to pay these costs the personal obligation of the attorney and not an agreement to pay the debt of another, and hence was not within the Statute of Frauds.

3. **CHAMPERTY AND MAINTENANCE: Contracts.** The common law upon the question of champerty and maintenance is enforced in this state. The doctrine of the later cases, however, is to relax the ancient stringency of the common law upon this question and uphold some contracts which formerly would have been condemned.

4. **———: ———: Guaranty.** Where an attorney employed by the execution debtor to represent a garnishee, agreed with the garnishee after judgment had been rendered against him, that if he would permit an appeal to be taken the attorney would guarantee that he would not lose anything above the amount of money held by him as garnishee, such an agreement is not contrary to the law of maintenance and may be enforced as the personal obligation of the attorney.

5. **———: ———: Reason for the Rule.** The reason underlying the law of champerty and maintenance is that it is unwise to permit one party to instigate another to enter into or continue litigation. Its purpose is to prevent the stirring up of strife and to discourage litigation, and unless there is something connected with the transaction which is contrary to the purpose of the law, there is no more reason for discrediting a contract between parties relating to the prosecution or defense of law suits, than there is for discrediting any other contract.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside, Judge.*

AFFIRMED.

*G. C. Dalton* for appellant.

(1)   The testimony in the whole case fails to show that defendant owes plaintiff anything, or that he obtained any money from him, or promised to pay him anything.   Morelock v. Railroad, 112 Mo. App. 640, 87 S. W. 6.   (2)   The guaranty of the payment of an obligation is an independent contract, and must be supported by an independent consideration.   Osborne & Co. v. Lawson, 26 Mo. App. 549.   (3)   The plaintiff attempts to set up in his testimony that he was lending his aid to help one side in the garnishment case.   Simmons v. Railroad, 19 Mo. App. 546.   (4)   Where a contract is void because it is contrary to public policy, a party coming into court relying on it will not be granted relief, whether he seeks to enforce the contract or whether he asks relief touching past transactions growing out of such contract.   Ward v. Hartley, 178 Mo. 135, 77 S. W. 302.   (5)   The alleged contract on which plaintiff bases his action is champterous and void on the ground of public policy.   Duke v. Harper, 66 Mo. 51; Comstock v. Flower, 109 Mo. App. 275, 84 S. W. 207; Geer v. Frank, 53 N. E. 965.   (6)   No action shall be brought to charge any person upon any special promise to answer for the debt, default or miscarriage of another.   R. S. 1909, sec. 2788; Gansey v. Orr, 173 Mo. 532, 73 S. W. 477; Ingersoll v. Baker, 41 Mich. 48, 1 N. W. 907.

*Wm. P. Elmer* for respondent.

(1)   Plaintiff's statement states a cause of action and is good as a petition.   It apprises defendant of the cause of action and is a bar to another action.   Hall v. Railway, 124 Mo. App. 661; Dalton v. Railway, 134 Mo. App. 391.   (2)   The contract is not champterous.   Plaintiff had no interest in the case and was not to derive any benefit therefrom and was not contracting to pay the cost for any litigant.   2 Words and Phrases, page 1045.   (3)   An agent or attorney who pretends to represent

another and bind such other in a contract who lacks authority, or exceeds his powers, or fails to bind his principal, is himself personally bound. Furn. Co. v. Crawford, 127 Mo. 356, 30 S. W. 163. (4) The verdict is based upon sufficient evidence to sustain it. Appellate courts will not reverse a judgment on the ground that the evidence does not support it unless the evidence strongly preponderates in favor of person demanding such reversal. Wallroth v. Bohenkamp, 97 Mo. App. 242; Vastine v. Rex, 93 Mo. App. 93; Whiltsett v. Ransom, 79 Mo. 258; Hill v. Telegraph Co., 105 Mo. App. 572.

COX, J.—This action was begun before a justice of the peace, upon an account for certain items of expense connected with the prosecution of an appeal to the Court of Appeals, in a garnishment proceeding under an execution in favor of J. J. Cope and against Mrs. Shoemate, in which this plaintiff was summoned as garnishee. An appeal was taken to the circuit court where upon trial plaintiff recovered judgment and defendant has appealed to this court.

The facts leading up to the proceedings in this case are as follows: J. J. Cope had a judgment against Mrs. Shoemate for one hundred dollars. Mrs. Shoemate owned a life estate in a house and lot in the city of Salem, Dent County, and her son, John Carney, owned the fee. Mrs. Shoemate resided upon this property and claimed it as her homestead. She and her son sold the property to Mrs. Shelton and joined in a general warranty deed to her. After this sale, Cope secured an execution upon his judgment against Mrs. Shoemate and had this property levied upon as the property of Mrs. Shoemate to satisfy his execution. Mrs. Shelton instituted a suit by injunction against him to prevent the sale of his property. Carney, by reason of the warranty in his deed undertook to conduct that suit for her and employed the defendant, Arthur, as an attorney to prosecute the action. It was necessary for Mrs. Shelton to

furnish an injunction bond, and at the request of defendant, plaintiff became surety upon that bond, and in order to protect him Carney placed two hundred dollars in his hands to indemnify him against any possible loss. The trial of the injunction suit resulted in the temporary injunction being made perpetual, which released plaintiff from the injunction bond. Before plaintiff had returned the two hundred dollars to Carney, Cope had him summoned as garnishee under his execution against Mrs. Shoemate upon the theory that the money held by him was the money of Mrs. Shoemate. At the instigation of defendant Arthur who was representing Carney, who had furnished the money, plaintiff answered and a trial was had upon the issues raised by the garnishment proceeding, and in that trial judgment went against the garnishee. Up to this point the parties agree as to the facts, but as to the subsequent proceedings there is a sharp conflict in their testimony. The plaintiff contends that the two hundred dollars which he then had was more than sufficient to have paid the judgment and costs against him under the garnishment proceeding, and that he was desirous of satisfying this judgment and releasing himself from further liability, and that the defendant, Arthur, was very anxious to have the case appealed and promised him that if he would permit the case to be appealed that he would guarantee him against any loss over and above the two hundred dollars which he then held. The defendant contends that he advised the plaintiff to pay the judgment, but that plaintiff insisted upon taking the appeal. An appeal was taken, and upon appeal the judgment of the circuit court was affirmed, and plaintiff was then compelled to pay it, including the costs of the appeal, which overran the two hundred dollars which he had on deposit to the amount of $43.86. Plaintiff paid this sum and demanded reimbursement from defendant which was refused and this suit followed.

It will be noticed from the statement of facts that the parties disagree as to the arrangement between

plaintiff and the defendant respecting the payment of costs in case any money was required above the two hundred dollars placed in plaintiff's hands by Carney. It is now insisted by appellant that a demurrer to plaintiff's testimony should have been sustained, but as the question as to what the agreement was, if there was any, was purely one of fact, and there being substantial testimony upon both sides of the proposition, the finding of the jury in plaintiff's favor is binding upon us.

It is next contended by appellant that the agreement, if made as plaintiff claims it was, was only an agreement to answer for the debt of another, and was therefore within the Statute of Frauds. If the agreement was to answer for the debt of another there is no question that it is covered by the Statute of Frauds, and could not be recovered upon because not in writing; but the real question is whether the agreement was to answer for the debt of another or whether the debt, when made, was the debt of defendant. Plaintiff's testimony upon that question is that he insisted all the time that he didn't want to take any risk of incurring any personal liability, but that Mr. Arthur insisted upon the appeal being taken and assured him that he would have sufficient money to pay the costs, and that he would not lose anything out of it, and that he, Arthur, would guarantee the plaintiff against any loss. M. F. Roberts, sheriff of Dent county, testified in plaintiff's behalf that he heard a conversation between plaintiff and defendant in relation to taking an appeal as follows:

"Well, about the best I could describe the conversation, they were talking—it seems as though Frank (the plaintiff) didn't hardly know what about appealing it; he wanted to know where the costs were coming from and Mr. Arthur told him for him to go ahead and appeal it, and if he didn't have money enough in his hands that he would guarantee that he would not lose anything and that is about the whole substance of the conversation."

Defendant contends that he made no agreement of the kind, but for the purposes of the appeal we must take the plaintiff's testimony alone. If the agreement was made as testified to by plaintiff and Roberts, it is clear to us that the parties understood from this that the two hundred dollars held by plaintiff was to be used and if the judgment was affirmed by the appellate court so that plaintiff was compelled to pay it that whatever costs there were over and above the two hundred dollars would be paid by defendant Arthur. The expenses of the appeal were paid by plaintiff as they accrued; the judgment was affirmed by the appellate court and plaintiff compelled to pay it, and when paid it overran the two hundred dollars in the amount asked for in this case. The issue made between the parties upon this testimony was fairly submitted to the jury under the instructions of the court, and plaintiff's recovery was put upon the ground that defendant had agreed to reimburse plaintiff for the sums of money furnished by plaintiff to him in the prosecution of the appeal which were over and above the two hundred dollars held by plaintiff. We think this fairly presented the case, for if plaintiff refused to allow the case to be appealed, if to do. so would place him in the position of incurring any risk as to liability for costs, and defendant insisted upon the appeal being taken and agreed to hold plaintiff harmless as to any cost above the amount of money held by plaintiff, this made the agreement to pay these costs the personal obligation of defendant and not an agreement to pay the debt of the plaintiff, and hence, was not within the Statute of Frauds. [Steele v. Ancient Order of Pyramids, 125 Mo. App. 680, 103 S. W. 108.]

It is next insisted by appellant that the agreement, if made as plaintiff contends, was of a champertous nature, and therefore, void. That the common law upon the question of champtery and maintenance is in force in this state has been fully settled since the case of Duke v. Harper, 66 Mo. 51. The doctrine of the later

cases, however, is to relax the ancient stringency of the common law upon these questions and to uphold some contracts which formerly would have been condemned. [Taylor v. Transit Co., 198 Mo. 715, 97 S. W. 155; Breeden v. Insurance Co., 220 Mo. 327, 119 S. W. 576.] In the latter case will be found an exhaustive treatment of the question of champtery and maintenance with full quotations from many of the ancient and modern cases upon that question. In the majority opinion in that case, at page 425, we find quoted approvingly from the case of Gilman v. Jones, 87 Ala. 691, 5 So. 785, the statement that the relation of attorney and client alone is sufficient to permit a party to assist in the prosecution or defense of a case from his own means without coming within the rule against champtery and maintenance. The present case, however, does not go that far. The court in this case instructed the jury that if they believed defendant was the attorney of plaintiff in taking the appeal then plaintiff could not recover. The verdict of the jury is therefore based upon a finding that defendant was not the attorney of plaintiff in the appeal, and if he was not the attorney of plaintiff then the appeal must have been taken at the instigation of the defendant himself, and if that were true, we see no reason for the application of the rule forbidding him to do so by reason of the fact that it was obnoxious to public policy. There is no evidence in this case that the defendant was to profit or lose a cent by reason of the appeal being taken, except the responsibility which he assumed in reference to the payment of costs if the two hundred dollars held by plaintiff was not sufficient for that purpose. The reason underlying the law of champtery and maintenance is that it is unwise to permit one party to instigate another to enter into or continue litigation, and the purpose of the law is to prevent the stirring up of strife and to discourage litigation and foster peace and good will among men. Unless there is something connected with the transaction which is contrary to the

purposes of the law there is no more reason for discrediting a contract between parties relating to the prosecution or defense of lawsuits than there is for discrediting any other contract. We do not think the contract in this case comes within the prohibition.

The issues of fact raised were fairly submitted to the jury under the instructions of the court, and we find no legal ground for complaint as to the result. The judgment will be affirmed. All concur.