JOHN E. BISHOP et al., Respondents, v. UNITED
RAILWAYS COMPANY of St. Louis, Appellant.

St. Louis Court of Appeals, May 7, 1912

1. **ATTORNEY AND CLIENT: Attorneys' Lien: Discharge of
First Attorney: Lien of Second Attorney.** Where a plaintiff
and a defendant compromised a case, and the attorney for
plaintiff brought suit against defendant for his lien, under sec-
tion 964, Revised Statutes 1909, whether another attorney, who
had previously represented plaintiff and had instituted the suit
for her and who had been discharged by her prior to the em-
ployment of the attorney seeking to enforce the lien, was dis-
charged for good cause was immaterial, so far as the right of
the second attorney to enforce his lien was concerned.

2. ——:——: **Statute Liberally Construed.** Section 964, Re-
vised Statutes 1909, which provides for the creation of an at-
torney's lien, is remedial and should be liberally construed.

3. ——:——: **Discharge of First Attorney: Lien of Second
Attorney.** An attorney who appears for the plaintiff after the
commencement of an action and after plaintiff's discharge of
the attorney who instituted the suit, has a lien on the cause of
action, under section 964, Revised Statutes 1909; the phrase
in said section, providing that an attorney shall have a lien
from the commencement of the action, merely marking the
earliest time at which it may be acquired, and the purpose of
the statute being to give a lien to every attorney who appears.

4. ——:——:——:——: **Priorities.** In case of a con-
flict between the lien of an attorney, who instituted a suit
which was settled and who was discharged by the plaintiff, and
the lien of an attorney who was subsequently employed by the
plaintiff, the lien of the first attorney would have priority.

5. ——:——:——:——: **Facts Stated.** Where plaintiff
discharged her first attorney, with whom she had an agree-
ment that he should receive forty per cent of any recovery, and
engaged other attorneys, making an agreement to give them
fifty per cent of the recovery, and defendant settled with plain-
tiff, paying her $1000, the second attorneys were, under section

964, Revised Statute 1909, entitled to recover the full amount of their compensation from defendant, without reference to the first attorney's claim, since, if it be conceded that the first attorney had a prior lien, the balance left after satisfying him would have been more than enough to have satisfied the second attorneys, and by paying over this balance to the client and ignoring their lien, defendant became liable to them for the amount thereof.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

AFFIRMED.

*Boyle & Priest, T. M. Pierce* and *Paul U. Farley* for appellant.

(1) The declaration of law given for plaintiff is erroneous in that it ignores the question of whether or not O'Connor had been discharged for good cause. United Railways Co. v. O'Connor, 153 Mo. App. 128. (2) The court erred in finding that plaintiffs were entitled to the sum of five hundred dollars. A finding, if for plaintiffs, can only be for the sum of three hundred dollars. United Railways Co. v. O'Connor, supra.

*Bishop & Cobbs* and *Albert E. Hausman* for respondents.

(1) All that portion of the answer asking for an order of interpleader was properly stricken out because only $250 was tendered into court, whereas it is admitted that plaintiffs were entitled to either three hundred dollars or five hundred dollars. Glassman v. Weisburg, 43 Mo. App. 214; Smith v. Grand Lodge, 124 Mo. App. 181. (2) As plaintiffs were the only attorneys appearing in the cause for Mrs. Harrigan after June 4, 1907, and at the time of settlement, they.

were entitled to a lien on the proceeds of the settlement, and the amount of their lien was fixed by the entire amount paid in settlement. William v. Barclay, 165 N. Y. 48; Tuck v. Manning, 53 Hun (N. Y.) 455; Matter of Prospect Ave., 1 N. Y. (Ann. Cas.) 347; In the Matter of H——, 93 N. Y. 381; Kennedy v. Garrick, 18 N. Y. Misc. 38; Trust v. Repoor, 15 How. Pr. 149; Ogden v. Devlin, 45 N. Y. Supp. 31; Sander v. Mining Co., 18 Utah 56. (3) The prior contract with O'Connor was not an assignment of any portion of Mary Harrigan's cause of action. It was only a charge thereon, or a lien, and hence plaintiffs' lien is fixed with reference to the whole amount paid in settlement. Curtis v. Railroad, 118 Mo. App. 352. (4) The declaration of law given by the court was sufficient to indicate the theory of the trial court, and in a law case tried to the court, that is all that is required. Smoke Preventive Co. v. St. Louis, 205 Mo. 220; Coleman v. Caldwell, County, 125 Mo. App. 643; McLaughlin v. Hardin, 133 Mo. App. 605. (5) Furthermore, the declaration of law given by the court is correct, even though it does not indicate the amount plaintiffs were entitled to recover. Defendant contends that if O'Connor was wrongfully discharged plaintiffs are only entitled to three hundred dollars, while it concedes that if O'Connor was rightfully discharged plaintiffs are entitled to five hundred dollars. If defendant desired an instruction fixing the measure of plaintiffs' recovery it should have asked it. Brown v. Railroad, 124 Mo. 71; Bank v. Ragsdale, 171 Mo. 186; Drey v. Doyle, 99 Mo. 465; Flaherty v. Transit Co., 207 Mo. 318; Wahl v. Transit Co., 203 Mo. 261.

STATEMENT.—Action by plaintiffs to recover damages for the deforcement by defendant of their lien as attorneys upon their client's cause of action against

the defendant.   The plaintiff had judgment and the defendant has appealed.

The facts are as follows:   On January 16, 1907, one Mary Harrigan, having a cause of action against the defendant, commenced suit thereon in the circuit court.   John J. O'Connor was the attorney who appeared for her then.   As compensation for his services he was to receive forty per cent of any amount recovered.   He appeared as her attorney up to June 4, 1907, when she discharged him for alleged good cause, and caused a copy of the discharge (it being in writing) to be filed in court and noted on the record. Thereafter he did not appear.   On the same day, by leave of court, the plaintiffs formally entered their appearance in said case as attorneys for Mary Harrigan, having been employed by her to act in that capacity under an agreement that they should be "paid a fee or compensation for their services herein rendered equal to one-half ($\frac{1}{2}$) of whatever sum the said Mary Harrigan shall realize or be paid or recover on said claim, whether the same be collected by suit, compromise or agreement, before or after judgment rendered."   Thereafter they solely appeared in the case as such attorneys, making with counsel for defendant stipulations for continuances and filing a motion and a reply, etc.   On October 28, 1907, while said case was still pending, undetermined, the defendant, dealing directly with Mary Harrigan, settled her cause of action by paying her $1000, without the knowledge or consent of plaintiffs, or of O'Connor.   Plaintiffs have never been paid anything for their services; neither has O'Connor been paid anything for his.   The trial was to the court, and the finding and judgment was in favor of the plaintiffs for $500.

CAULFIELD, J. (after stating the facts).—I. Defendant complains that, in the single declaration of law given by the trial court, the question of whether

O'Connor was discharged for good cause was ignored. This question was properly ignored as it concerned only O'Connor's right to compensation and his lien therefor, matters which have no relation to the controversy between the parties to this suit. Plaintiffs claim their lien under section 964 of the Revised Statutes of Missouri 1909, the material parts of which are as follows: "The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which . . . cannot be affected by any settlement between the parties before or after judgment." This section is remedial and should be liberally construed. [Wait v. Railroad, 204 Mo. 491, 501, 103 S. W. 60.] Prior to its enactment an attorney in this state had no lien for his services on his client's cause of action, not even on the judgment. [Alexander v. Railway Co., 54 Mo. App. 66; Frissell v. Haile, 18 Mo. 18.] In case the client settled direct with the adverse party the attorney had no recourse except to follow the proceeds into the hands of his client, who was often insolvent. Thus attorneys were often unjustly deprived of the fruits of their labor. To remedy this evil the attorneys' lien act was passed. [Taylor v. Transit Co., 198 Mo. 715, 730, 97 S. W. 155.] In this state the case of one who appeared as attorney for a plaintiff after the commencement of the action was as much within the mischief this statute was intended to remedy as was that of the one who appeared at such commencement. Indeed he may have rendered more arduous and effective service than the latter and might suffer more from being cheated out of his share in the fruits of the cause by means of a settlement made over his head or behind his back. There was just as much rea-

son for giving him a lien as there was for giving a lien to the attorney who first appeared, and by construing the section so as to give it to him, no violence is done to the language used. It is true that the section grants the lien only in favor of "*the* attorney who appears," but these words may very properly be held to mean "*any* attorney who appears" (Noyes v. Children's Aid Society, 3 Abbott's New Cases, 36), which is in accord with the true purpose of the act. In this respect, it is of some, though perhaps slight, significance, that in stating the meaning of the section our Supreme Court uses the more indefinite article "an" instead of the article "the:" Thus, "the plain and obvious meaning of the section is that *an* attorney of record shall have a lien," etc. [Taylor v. Transit Co., 198 Mo. 715, 725, 97 S. W. 155.]

It seems to us evident that the Legislature used the language in question to distinguish an attorney who appears from one who does not appear. As said in the language just quoted "an attorney *of record*" has a lien. There is a sound and urgent reason for this, as by limiting the lien to an attorney who appears of record the adverse party is advised, as he should be advised, with whom he may deal and whose lien rights he must observe. On the other hand there is no apparent good reason for arbitrarily denying a lien to one attorney rendering service merely because another had already acquired a lien for other services. Cases are quite common where two or more persons have liens on the same property without any special inconvenience arising, and two or more attorney's liens are not apt to cause any greater inconvenience. This law does not deprive a defendant of any of his rights. It does not deprive him of the right to make a settlement, but in dealing with the plaintiff he must take cognizance of the existence of the attorney's lien or liens and act accordingly. If such lien or liens be ignored, he will be required to account to the attorney

or attorneys in an action at law for the amount of the lien. So it is in respect to other property; in dealing with the owner of it, if one has notice of the existence of a lien or liens, such lien or liens cannot be ignored. [O'Connor v. Transit Co., 198 Mo. 622, 641, 642, 97. S. W. 150.] There is no significance in the fact that an attorney has a lien ''from the commencement of the action.'' That language clearly marks the earliest, not the latest, time at which the lien can be acquired under this particular section. [See Bevins v. Albro, 86 Hun (N. Y.) 590.]

So we hold that plaintiffs had a lien upon their client's cause of action for their compensation and a clear right to recover damages from defendant for deforcing it, notwithstanding O'Connor may have been wrongfully discharged and may still retain his lien for compensation or a right to recover damages from defendant for deforcing it. Of course if there had been a conflict between the liens, as if the aggregate of the attorney's claims exceeded the whole amount realized, O'Connor's lien, if not lost or waived, would have priority over that of plaintiffs, but there is no such conflict and the question of priority is not involved; neither is the question of O'Connor's right to a lien.

II. Defendant next contends that the amount of plaintiffs' recovery should not have exceeded fifty per cent of what was left of the amount paid to the client after deducting O'Connor's forty per cent. This contention is without merit. Plaintiffs had a lien for their compensation. The statute expressly provides that such compensation ''is governed by agreement, express or implied.'' Under the agreement in this case plaintiffs were clearly entitled to half the amount paid to their client in settlement without reference to O'Connor's claim. For this half they had their lien.

If it be conceded that O'Connor has a prior lien, still the balance left after satisfying him would have been more than sufficient to satisfy plaintiffs' lien. By paying over this balance to the client and ignoring the plaintiffs' lien defendant became liable to plaintiffs for the value of such lien, which was the amount recovered.

The judgment is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.